# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

DANIEL HERNANDEZ, individually          )
and on behalf of all other persons      )
similarly situated,                     )
                                        )
        Plaintiffs,         )
                                        )
v.                                      )    Civil Action No. 3:22-cv-530–HEH
                                        )
KBR, INC., *et al.*,                    )
                                        )
        Defendants.         )

## MEMORANDUM OPINION
### (Denying Defendants' Motions to Dismiss and
### Granting Plaintiffs' Motion to Strike)

This matter is before the Court on Defendants'[1] Motions to Dismiss (ECF Nos. 61,

64), filed on December 12 and 20, 2022, respectively, and Plaintiffs'[2] Motion to Strike,

(ECF No. 86), filed on March 31, 2023.  Defendants move the Court to dismiss Plaintiffs'

---

[1] Defendants include: KBR, Inc.; KBR Holdings, LLC; KBR Services, LLC; Industrial Tent Systems, LLC; Lodging Solutions, LLC; Star Payment Systems, Inc.; Industrial Tent Systems Holdings, LLC; 2M Lodging Solutions, LLC; and Bolton Holdings, LLC (collectively, "Defendants").  Defendants have submitted filings in two groups.  The first group is "KBR Defendants," which is comprised of Defendants KBR, Inc.; KBR Holdings, LLC; and KBR Services, LLC ("KBR Defendants").  The other group includes all remaining Defendants: Industrial Tent Systems, LLC; Lodging Solutions, LLC; Star Payment Systems, Inc.; Industrial Tent Systems Holdings, LLC; 2M Lodging Solutions, LLC; and Bolton Holdings, LLC ("ITS Defendants").  ITS Defendants filed their Motion to Dismiss (ECF No. 61) and KBR Defendants filed a Motion to Join that Motion to Dismiss (ECF No. 64).  KBR Defendants' Motion also asserts an additional argument, as discussed below.

[2] Plaintiff is Daniel Hernandez, individually and on behalf of all other persons similarly situated.

Second Amended Complaint (ECF No. 56), filed on November 28, 2022.[3]  This case arises from a Fair Labor Standards Act ("FLSA") claim, in which Plaintiffs, who are allegedly employees of Defendants, claim Defendants did not compensate them for their overtime work.  Specifically, Plaintiffs argue that they worked for Defendants as kitchen workers at Fort Pickett in Blackstone, Virginia, and regularly worked more than 40 hours a week without overtime pay.  (Second Am. Compl. at 2.)  Plaintiffs seek unpaid overtime wages, liquidated damages, pre- and post-judgment interest, and attorneys' fees. (Second Am. Compl. ¶ 5.)

Defendants' Motions to Dismiss are pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Namely, Defendants argue that Plaintiffs' Second Amended Complaint should be dismissed because their FLSA claims are moot so the Court lacks subject matter jurisdiction and because Plaintiffs have failed to state a claim upon which relief can be granted.  (ITS Defs.' Mem. in Supp. at 5, ECF No. 62 [hereinafter "ITS Mem. in Supp."].)  The parties have submitted memoranda supporting their respective positions as to the Motions to Dismiss.  The Court heard oral argument on both KBR Defendants and ITS Defendants' Motions to Dismiss on March 20, 2023.  At the hearing, the Court announced that it would take the Motions under advisement and directed "KBR Defendants to file a brief on the issue of waiver."  (ECF No. 79.)

---

[3] Plaintiffs' original Complaint named Carlos Julio ("Julio") as a plaintiff, and included state law claims brought under the Virginia Overtime Wage Act ("VOWA").  The Second Amended Complaint removed Julio as a plaintiff, removed all claims brought under VOWA, added KBR Services, LLC, as a Defendant, and added two factual allegations regarding KBR Defendants.

Plaintiffs' Motion to Strike is pursuant to Local Rule 7(F)(1) of the Local Rules for the Eastern District of Virginia and moves this Court to strike ITS Defendants' supplemental brief (ECF No. 84). The parties have submitted memoranda supporting their respective positions as to the Motion to Strike. The Court will dispense with oral argument as to this motion because the facts and legal contentions have been adequately presented to the Court, and oral argument would not aid in the decisional process. *See* E.D. Va. Loc. R. 7(J).

For the reasons that follow, Defendants' Motions to Dismiss (ECF Nos. 61, 64) will be denied and the previously imposed Stay as to the issue of Conditional Certification (ECF No. 28) will be lifted. Additionally, the Court will grant Plaintiffs' Motion to Strike (ECF No. 86). Document ECF No. 84 will be stricken from the record.

## I.   BACKGROUND

KBR Defendants contracted with the U.S. Army to provide support for the federal government's efforts to resettle Afghan evacuees at Fort Pickett in Blackstone, Virginia, following the end of the U.S.-Afghanistan war. (ITS Mem. in Supp. at 1–2.) KBR Defendants then entered into subcontracts with ITS Defendants to perform culinary and logistical support[4] services towards that effort. (*Id.* at 2.) ITS Defendants hired individual workers, along with second-tier subcontractors, like Star Payment, to meet its contractual obligations to KBR. (*Id.*) As the general contractor, KBR Defendants

---

[4] Plaintiffs "perform[ed] kitchen work, including as cooks, food preparers, dishwashers, cleaners, helpers, servers, and in other kitchen-related tasks[.]" (Second Am. Compl. ¶ 34.)

determined pay rates, working hours, and reserved the right to discipline and terminate

subcontractor employees. (Second Am. Compl. ¶ 28.)

Plaintiffs worked for Defendants as kitchen workers at Fort Pickett. (*Id.* ¶ 11.)

They argue that they "regularly worked in excess of 40 hours per week, without receiving

proper overtime compensation as required by applicable federal law." (*Id.* ¶¶ 35, 45.) In

particular, Hernandez claims that he typically worked seven days per week, for a total of

roughly 84 hours per week. (*Id.* ¶ 48.) Regardless of how many hours they worked,

Plaintiffs were allegedly only paid approximately $350 a day and never received any

overtime pay. (*Id.* ¶ 51.)

Before the contract between KBR and the U.S. Army was completed, the

Department of Labor ("DOL") initiated an investigation to determine whether Defendants

complied with regulations concerning the payment of wages. (ITS Mem. in Supp. at 2.)

The DOL determined that ITS owed back wages in the form of overtime under the FLSA.

(*Id.*) In response, on July 6, 2022, ITS maintains that it executed a Form WH-58,

agreeing to make the back payments owed as a first round of payments to the workers.

(*Id.*) There is no evidence in the record to show, however, that Plaintiffs signed a Form

WH-58 or otherwise affirmatively waived their right to bring forth their FLSA claims.[5]

Defendants maintain that ITS then satisfied its obligation to pay for those owed back

wages and fringe benefits directly to the employees identified by the DOL by opting to

---

[5] Defendants maintain that Plaintiffs signed WH-60 forms, however, there is no evidence of a
signed WH-60 in the record. Even if there were signed WH-60 forms, that would not resolve
this issue because, as elaborated below, such forms do not contain waiver language.

make a global payment to the DOL, who then disbursed those wages to all individuals based on its calculations. (*Id.*)

On October 17, 2022, Plaintiffs filed a Motion for Conditional Certification and Notice to Putative Collective Members, requesting that the Court conditionally certify and send notice to "all individuals employed by Defendants at Fort Pickett in Blackstone, Virginia for any length of time during the past three years, who performed institutional food service work, including but not limited to cooking, food preparation, dishwashing, cleaning, serving, and any other related food service tasks." (Mem. in Supp. Mot. for Cond'l Cert. at 2, ECF No. 15.)

Defendants opposed Plaintiffs' Motion for Conditional Certification, claiming that Plaintiffs lack standing to bring their claim, pursuant to Federal Rule of Civil Procedure 12(b)(1).[6] (ITS Mot. to Stay Cond'l Cert. at 2, ECF No. 17). Specifically, Defendants

---

[6] In KBR Defendants' Motion to Join ITS Defendants' Motion to Dismiss, KBR Defendants also argue that "KBR Defendants did not employ Plaintiff, or any of the allegedly similarly situated individuals he seeks to represent." (Mot. to Join, at 1–2.) This argument is unpersuasive. As Plaintiffs point out, "[t]he FLSA broadly defines 'employer' to include 'any person acting directly or indirectly in the interest of an employer in relation to an employee[.]'" (Pls.' Opp'n Br. at 18, ECF No. 65 (quoting 29 U.S.C. § 203(d), (g).) Joint employment under the FLSA turns on whether two or more entities are associated with respect to a worker such that the entities share, agree to allocate responsibility for, or otherwise codetermine the essential terms and conditions of the worker's employment. *Akers v. Cnty. of Sampson*, 2022 WL 16936034, at *8 (E.D.N.C. Nov. 14, 2022) (quoting *Salinas v. Com. Interiors, Inc.*, 848 F.3d 125, 141 (4th Cir. 2017)). Plaintiffs' Second Amended Complaint alleges, among other things, that KBR Defendants was the general contractor and KBR Defendants, along with the other Defendants, shared a common business purpose in that they employed Plaintiffs, used Plaintiffs' labor for their shared benefit, had substantial control over Plaintiffs' working conditions, and maintained control, oversight, and direction over the operations of the work performed by Plaintiffs. (Second Am. Compl. ¶¶ 19–26.) The Court concludes that, at this early stage in the litigation, Plaintiffs have sufficiently alleged that KBR Defendants were joint employers of Plaintiffs and share liability under the FLSA. *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591

5

argue that because Plaintiffs "have already been remedied through the DOL's investigatory efforts," Plaintiffs' claims are now moot. (*Id.*) Defendants also argue that the DOL has exclusive jurisdiction over Plaintiffs' claims. Plaintiffs, however, contend that even if they have received some funds from the DOL, they nonetheless have standing to bring this claim because they have not affirmatively waived their FLSA claims nor been fully compensated. (Pls.' Opp'n. Br. at 10–11, ECF No. 65.) And as to the exclusive jurisdiction issue, Plaintiffs maintain that the DOL does not have exclusive jurisdiction over their claims because Plaintiffs sued under the FLSA, which provides a private right of action.

Because Defendants' Motions to Dismiss challenge this Court's subject matter jurisdiction, the Court granted Defendants' Motion to Stay as to the issue of the Conditional Certification so that the Court could first address Defendants' Motions to Dismiss. (Mem. Order at 4, ECF No. 28.) Accordingly, this Memorandum Opinion will address the issues raised in Defendants' Motions to Dismiss (ECF Nos. 61, 64) and not Plaintiffs' stayed Motion for Conditional Certification and Notice to Putative Collective Members (ECF No. 14) at this stage.

At the hearing on Defendants' Motions to Dismiss, the Court heard from both the ITS and KBR Defendants as to their respective Motions to Dismiss. Both groups of Defendants maintained that Plaintiffs had waived their right to bring forth their FLSA claims. During rebuttal, KBR Defendants requested the opportunity to provide additional

---

F.3d 250, 253 (4th Cir. 2009) (holding that the court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff).

briefing as to the issue of "waiver." Accordingly, the Court directed "KBR Defendants to file a brief on the issue of waiver." (ECF No. 79.) On March 28, KBR Defendants appropriately filed their supplemental brief on that issue. (ECF No. 81.) Then, on March 30, ITS Defendants filed their own supplemental brief, as well as 32 pages of newly presented exhibits, including a supplemental declaration (ECF Nos. 84, 84-1, 84-2, 84-3.) Pursuant to Local Rule 7(F)(1), Plaintiffs move this Court to strike KBR Defendants' supplemental brief and accompanying exhibits.

## II.  STANDARD OF REVIEW

Defendants claim that Plaintiffs lack standing to sue because Plaintiffs' FLSA claims are moot. Federal district courts exercise limited jurisdiction. *Exxon Mobil Corp. v. Allapattah Servs. Inc.*, 545 U.S. 546, 552 (2005). The standing doctrine reflects the mandate from Article III of the United States Constitution that courts may only hear cases and controversies. U.S. Const. art. III, § 2, cl. 1. "One element of the case-or-controversy requirement is that plaintiffs must establish they have standing to sue." *Clapper v. Amnesty Inter. USA*, 568 U.S. 398, 408 (2013) (internal citations and quotation marks omitted). To invoke federal jurisdiction, a plaintiff bears the burden of establishing three "irreducible minimum requirements" of Article III standing: "(1) an injury in fact that is (2) fairly traceable to the challenged conduct and (3) likely to be redressed if the court rules in [the plaintiff's] favor." *DiCocco v. Garland*, 52 F.4th 588, 591 (4th Cir. 2022) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

7

During the pleading stage, "general factual allegations" showing these elements suffice. *Id.* at 561.

Defendants' Motions to Dismiss challenging standing are tested under Federal Rule of Civil Procedure 12(b)(1). *See Taubman Realty Grp. Ltd. P'ship v. Mineta*, 320 F.3d 475, 480–81 (4th Cir. 2003). "A defendant may challenge [standing at the motion to dismiss stage] in one of two ways: facially or factually." *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017). In a facial challenge, the defendant argues that the complaint "fails to allege facts upon which [standing] can be based," and in a factual challenge, the defendant contends "that the jurisdictional allegations of the complaint [are] not true." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

Defendants facially attack Plaintiffs' standing, so the Court need only address whether Plaintiffs' general factual allegations meet the pleading requirements. *Id.* Where, like here, Defendants make a facial attack, Plaintiff is "afforded the same procedural protection as she would receive under a Rule 12(b)(6) consideration," wherein "the facts alleged in the complaint are taken as true," and Defendants' challenge "must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Id.*

A Rule 12(b)(6) motion "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). "A complaint need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020)

8

(alteration in original) (quoting *Tobey*, 706 F.3d at 387).  Still, a "complaint must provide 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"Allegations have facial plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Tobey*, 706 F.3d at 386 (quoting *Iqbal*, 556 U.S. at 678).  A court, however, "need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *Turner*, 930 F.3d at 644 (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)).  In considering a motion to dismiss, the complaint is viewed in the light most favorable to the plaintiff.  *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009).

"Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 763 (4th Cir. 2011) (quoting *Iron Arrow Honor Socy. v. Heckler*, 464 U.S. 67, 70 (1983)).  Thus, a federal court's jurisdiction over a case depends on whether there exists an actual live controversy between the parties.  *Arizonans for Off. English v. Arizona*, 520 U.S. 43, 67 (1997).  "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Porter v. Clarke*, 852 F.3d 358, 363 (4th Cir. 2017).

This Court has previously stated, "[n]otably, the [United States Court of Appeals for the] Fourth Circuit has joined several of its sister circuits to adopt a lenient pleading standard for FLSA claims." *Esedebe v. Circle 2*, 2021 WL 232595, at *5 (E.D. Va. Jan. 22, 2021) (citing *Hall v. DIRECTV, LLC*, 846 F.3d 757, 777 (4th Cir. 2017)).

Local Rule 7(F)(1) permits the filing of a moving brief, a response brief, and a reply brief. The rule prohibits any further briefs or written communications "without first obtaining leave of Court." E.D. Va. Loc. R. 7(F)(1). Where briefs are filed without leave, courts will strike them from the record. *See, e.g., Key v. Robertson*, 626 F. Supp. 2d 566, 577 (E.D. Va. 2009).

## III.  ANALYSIS

### A.  Defendants' Motions to Dismiss

As stated, Defendants raise two primary arguments in support of their Motions to Dismiss. First, they contend that Plaintiffs' claims are moot because Defendants "have already paid and/or are in the process of paying Plaintiffs and all individuals in the putative class the money they claim they are owed." (ITS Mem. in Supp. at 5.) Second, Defendants assert that the DOL has exclusive jurisdiction over Plaintiffs' claims so Plaintiffs do not have standing to assert their federal claims. (*Id.* at 7.) The Court will address each of Defendants' arguments in turn.

As to the first argument, the FLSA provides, in pertinent part:

> The Secretary is authorized to supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees under section 206 or section 207 of this title, *and the agreement of any employee to accept such payment shall upon payment in full constitute*

10

> *a waiver by such employee* of any right he may have under subsection (b) of this section to such unpaid minimum wages or unpaid overtime compensation and an additional equal amount as liquidated damages.

29 U.S.C. § 216(c) (emphasis added). An FLSA claim can be mooted when the plaintiff has received complete relief for their claim, such as payment of all wages and damages owed, and there is no ongoing controversy or dispute over the claim. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 73 (2013).

Defendants contend that because they paid the DOL the money Plaintiffs are owed, Plaintiffs waived their right to bring forth their FLSA claims, and thus their FLSA claims should be dismissed at moot. (ITS Mem. in Supp. at 5). While not binding on this Court, Defendants refer to *Fast v. Cash Depot Ltd.* to support their position. No. 16-C-1637, 2018 WL 5832155, at *1 (E.D. Wis. Nov. 7, 2018), *aff'd*, 931 F.3d 636 (7th Cir. 2019). In *Fast*, the plaintiff, Timothy Fast, sued his former employer, Cash Depot, on behalf of himself and all other similarly situated current and former non-exempt "Field Service Technicians," alleging that Cash Depot violated the FLSA by failing to compensate the plaintiffs the correct overtime pay rate and for all overtime hours worked. *Id.* After Fast filed his complaint, Cash Depot paid him and all other class members the full amount of the alleged underpayment. *Id.*

Fast's counsel explicitly admitted that Fast and the other class members had been paid all wages owed but that the court had yet to resolve the outstanding issue of attorneys' fees. *Id.* at *2. The court denied Fast's motion for attorneys' fees and stated that "Fast concedes that he has been fully paid the wages owed pursuant to the FLSA. In

11

short, a live controversy no longer exists, and the court lacks jurisdiction as a result. Cash Depot's motion for summary judgment is therefore granted." *Id.* at *4. Defendants maintain that *Fast* is analogous to the case at hand because "[l]ike Cash Depot, Defendants have already paid the DOL, which has paid or is in the process of paying, Plaintiffs and all individuals within the putative class the full amount of alleged unpaid wages." (ITS Mem. in Supp. at 6.)

Plaintiffs argue that their claims are not mooted by the DOL investigation because Hernandez and the class members "have not waived their claims against Defendants simply because the DOL may have investigated and purportedly issued payments to Plaintiffs." (Pls.' Opp'n Br. at 10.) Plaintiffs maintain that the acceptance of funds alone does not mean that they "agreed" to waive their FLSA claims. (*Id.*) Specifically, Plaintiffs state the term "agreement" in § 216(c)'s clause: "the agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee," requires an agreement "independent of payment." (*Id.* at 10–11.)

Plaintiffs contend that Defendants have failed to submit any proof that Plaintiffs affirmatively waived their rights to bring forth their FLSA claim. The only documentation offered by Defendants in opposition are forms executed by only some of the *Defendants* which state that they "agree to pay the listed employees the amount due shown above." (Holt. Decl. Ex. A to ITS Mem. in Supp., ECF No. 42-1.) Additionally, these forms fail to specify whether Plaintiffs were compensated for all wages due, liquidated damages, and interest. (Pls.' Opp'n Br. at 13.) Moreover, Plaintiffs assert that

12

unlike in *Fast*, where Fast's counsel conceded that plaintiffs were *fully compensated* for unpaid overtime and liquidated damages owed to them, Plaintiffs, in this case, have not conceded that they have been fully compensated. *Fast*, 2018 WL 5832155, at *1.

Plaintiffs cite various cases in support of their position. "While the Fourth Circuit has not addressed whether an employee agreeing to funds from an employer and subsequently cashing a check for wages results in the waiver of FLSA rights, other courts in this circuit have determined that an employee must be on notice of the potential waiver and that 'agreement is more than the acceptance of funds, as it must exist independent of payment.'" *Moss v. Senior Care Carolinas, PLLC*, No. 3:20-cv-00137-FDW-DCK, 2020 WL 3472600, at *8–9 (W.D.N.C. June 24, 2020) (citing *Jones v. Midlands Neurology & Pain Assocs., P.A.*, No. 3:11-2623-CMC-SVH, 2013 WL 5934509, at *5 (D.S.C. Sept. 20, 2013)).

"Typically, an employee manifests assent by signing a receipt (either the standard WH-85 or another form authorized by the DOL), which puts the employee on notice of the resulting waiver." *Dent v. Cox Commc'ns Las Vegas, Inc.*, 502 F.3d 1141, 1147 (9th Cir. 2007); *see also Jones v. Midlands Neurology & Pain Assocs., P.A.*, No. 3:11-2623-CMC-SVH, 2012 WL 2913224, *7 & n.5 (D.S.C. July 17, 2012) (adopting report and recommendation and denying summary judgment where "[d]efendants merely submitted evidence that shows payment of the wages to Plaintiff, and not evidence that she knowingly waived her FLSA rights by accepting the payment" and the plaintiff alleged

"that she was not aware she was potentially relinquishing rights and that she did not receive a Form WH-58 . . . to sign.").

"[V]alidly waiving the right to sue requires two 'distinct' acts: 'agreement' and 'payment in full.'" *Pfefferkorn v. Primesource Health Grp., LLC*, No. 17-cv-1223, 2018 WL 828001, at *11 (N.D. Ill. Feb. 12, 2018) (quoting *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306–07 (7th Cir. 1986)). "Thus, evidence of the payment alone does not establish waiver: 'There must also be a release.'" *Id.* (quoting *Walton*, 786 F.3d at 306). "Absent any showing that this group of plaintiffs executed a release or otherwise agreed to waive their right of action, they may participate in this action." *Id.* (citing *Walton*, 786 F.2d at 307). "Simply tendering a check and having the employee cash that check does not constitute an 'agreement' to waive claims; an agreement must exist independently of payment." *Beauford v. ActionLink, LLC*, 781 F.3d 396, 406 (8th Cir. 2015). Therefore, whether an employee receives or cashes a check is irrelevant if there is no valid agreement to the waiver of rights. *Id.*

The Court was persuaded by Plaintiffs' briefs and oral arguments that waiver of FLSA rights requires more than a mere acceptance of funds. However, KBR Defendants argued, for the first time on rebuttal, that they believed, if given the opportunity, they could bolster their position regarding the discrete legal issue of "waiver" of FLSA rights. Accordingly, the Court directed KBR Defendants to further brief the issue of "waiver." KBR Defendants filed their supplemental brief as directed. (KBR Suppl. Br., ECF No. 81.) However, the supplemental brief effectively repeats the same arguments

14

previously raised by ITS Defendants in their Motion to Dismiss. Specifically, KBR Defendants assert that "Plaintiff accepted the DOL's back-wage payment by completing a Form WH-60 and subsequently received payments from the DOL of the amounts it had determined were due, thus waiving [named] Plaintiff's FLSA claims." (*Id.* at 2.) They also raise the previously made argument that "receipt of the amount determined due by the DOL here constituted payment in full." (*Id.* at 3.)

The Court does not find KBR Defendants' recycled arguments compelling. Form WH-60s do not contain waiver language. *See* ECF No. 43-11; *see also Zhengfang Liang v. Café Spice SB, Inc.*, 911 F. Supp. 2d 184, 198–99 (E.D.N.Y. 2012) ("The DOL's WH-60 form . . . does not contain a waiver of plaintiff's right to sue under the FLSA. Thus, although plaintiff received payment from the DOL for back wages, there is nothing to indicate that plaintiff agreed to accept the payment and waive any claims under 29 U.S.C. § 216(c).") Moreover, as Plaintiffs point out, there is no evidence of a signed WH-60 in the record. KBR Defendants cite to emails between ITS Defendants' counsel and the DOL which confirm the non-existence of a signed WH-60: "the [Regional Officer] mailed Mr. Daniel Hernandez a WH-60 and he has not returned it nor has [he] filed his WH-60 electronically to receive the [back wages] due to him." (ECF No. 19-2 at 6.)

KBR Defendants' attempt to bolster their position with caselaw fails. Indeed, the cases to which they cite further emphasize the conclusion that affirmative waiver is necessary in instances such as this. *See, e.g., Im v. Pearl Dragon Restaurant, Inc.*, 2021 WL 1123582, at *3 (D. Colo. Mar. 24, 2021) (noting that a DOL payment constitutes a

payment "in full" but also stating that "the issue of waiver is one that must be decided at trial" because there were "disputed issues as to what the DOL investigation, and therefore payments, were meant to cover."); *Rivers v. Zeno Off. Sols.*, 2020 WL 6434515, at *3 (Oct. 2, 2020) (holding that the plaintiff waived his right to bring an FLSA claim where, unlike in this case, undisputed facts demonstrated the plaintiff received a Form WH-58[7]).

Plaintiffs' arguments and authorities in response to KBR Defendants' supplemental brief are compelling. Plaintiffs point to numerous federal circuit courts which have held that waiver under § 216(c) requires an *agreement* to waive rights, which must exist *in addition* to payment received. In *Walton*, 786 F.2d at 306–07, the United States Court of Appeals for the Seventh Circuit held that although the DOL had "accept[ed] the aforementioned back-wages in full settlement of a disputed claim" and the workers had cashed the checks, there was no waiver of rights. This was because the payment did not contain any release clause, nor was payment accompanied by a WH-58 form or similar document informing the workers that acceptance of the payment would waive their rights to file suit. *Id.*

The court reasoned that to construe a mere acceptance of funds as a waiver would "remove[] 'agreement' from § 216(c), treating the statute as if 'payment in full' were itself sufficient to abrogate the employee's right to sue." *Id.* at 305. After reviewing § 216(c) and its legislative history, the court determined that the Senate intended "agreement" and "payment in full" to be distinct requirements. *Id.*; *see also Niland v.*

---

[7] Form WH-58s contain explicit waiver language.

*Delta Recycling Corp.*, 377 F.3d 1244, 1248 (11th Cir. 2004); *Dent*, 502 F.3d at 1146

(holding that a WH-58 form executed by the plaintiff only provided adequate notice for

waiver of rights associated with the time period specified on the form and not unpaid

wages outside of that time period); *Beauford*, 781 F.3d at 406–08 (8th Cir. 2015)

(holding that the plaintiffs had not waived their FLSA claims by cashing checks even

where, as part of the DOL investigation, the defendant agreed to pay missing back wages

and there was a disclaimer on the checks which stated they represent "full payment" for

"wages earned, including minimum wage and overtime, up to the date of the check");

*Sneed v. Sneed's Shipbuilding, Inc.*, 545 F.2d 537, 539–40 (5th Cir. 1977); *Moss*, 2020

WL 3472600, at *8–9; *Jones*, 2013 WL 5934509, at *5.

While the Court may agree with Defendants that "[i]t seems highly unlikely . . .

that this litigation could uncover any more than a handful of people" who are entitled to

receive additional money (ITS Reply at 3, ECF No. 67), and the Court is not convinced

that further discovery will reveal that Plaintiffs will be entitled to much more funds—or

any more funds—the Court nonetheless concludes that a live controversy still exists.

Defendants have not demonstrated that Plaintiffs waived their claims under the FLSA.

Furthermore, as in *Simmons*, there is no offer of judgment against the Defendants.

*Simmons*, 634 F.3d at 764–65.  Therefore, even if the Defendants did pay the DOL what

is owed to Plaintiffs, Plaintiffs are still entitled to seek judgment against the Defendants.

Similarly, even if Plaintiffs only seek attorneys' fees, the claim is still not mooted

because an "FLSA plaintiff is entitled to an award of some reasonable attorney[s'] fees

and costs." *Sahyers v. Prugh, Holliday & Karatinos, P.L.*, 560 F.3d 1241, 1244 (11th Cir. 2009), *see also* 29 U.S.C.A. § 216(b). Thus, the Court concludes that Plaintiffs' FLSA claims are not moot.

As to Defendants' second argument, they claim that the DOL has "already intervened and exerted its exclusive jurisdiction over this dispute under the [Service Contract Act[8] ("SCA").]" (*Id.* at 6–7 (quoting *U.S. ex rel. Sutton v. Doubleday Off. Servs. Inc.*, No. 92-1909 FMS, 1996 WL 207766, at *3 (N.D. Cal. Apr. 23, 1996) ("It is well established that the SCA does not confer a private right of action, but rather provides the Secretary of Labor with the exclusive right of administrative enforcement.") (citing *United States v. Deluxe Cleaners and Laundry, Inc.*, 511 F.2d 926 (4th Cir. 1975) (overruled on other grounds))).) Defendants maintain that because the DOL has already exerted its exclusive jurisdiction, that even if Plaintiffs' claims are not moot, this Court should still grant Defendants' Motions to Dismiss. (ITS Mem. in Supp. at 7.)

Plaintiffs maintain that the DOL does not have exclusive jurisdiction here, where Plaintiffs have not made any claims under the SCA. (Pls.' Opp'n Br. at 14). It is well settled that the FLSA grants Plaintiffs a private right of action for unpaid overtime compensation. *See Amaya v. Power Design, Inc.*, 833 F.3d 440, 444 (4th Cir. 2016) ("[T]he FLSA clearly provides a right of action; employees may sue in state or federal court for unpaid minimum wages and overtime compensation, plus liquidated damages."). Defendants do not dispute that Plaintiffs have standing under the FLSA.

---

[8] McNamara-O'Hara Service Contract Act, 41 U.S.C. §§ 6701–6707.

The FLSA applies to employees who engage in interstate commerce, and to enterprises with annual sales or business done of $500,000.  29 U.S.C. §§ 203(s)(1)(A)(ii), 206(a).

Plaintiffs may bring their claims under the FLSA because they provided labor in interstate commerce and because Defendants are enterprises engaged in interstate commerce whose annual gross volume of sales is over $500,000.  *See id.*  The SCA does not prohibit plaintiffs, like the ones in this case, from bringing a civil action under the FLSA.  *See Powell v. U.S. Cartridge Co.*, 339 U.S. 497, 516–17 (1950) (holding that workers on public contracts were not exempted from FLSA coverage where Congress did not articulate a specific exemption); *Masters v. Maryland Mgt. Co.*, 493 F.2d 1329, 1332 (4th Cir. 1974) (holding that both the SCA and Contract Work Hours and Safety Standards Act . . . could be applied concurrently with the FLSA, as the statutes were not mutually exclusive); *Amaya*, 833 F.3d at 444 ("Congress intended the FLSA to apply broadly notwithstanding any overlap with other labor statutes.").

For these reasons, the Court concludes that Plaintiffs may pursue their private right of action for unpaid overtime claims under the FLSA even if they have performed work that was subject to the SCA.  Accordingly, the Court will deny Defendants' Motions to Dismiss.

### B.  Plaintiffs' Motion to Strike

During the March 20, 2023 hearing, the Court directed KBR Defendants to brief the issue of "waiver."[9]  Without leave of Court, ITS Defendants filed a supplemental

---

[9] As stated previously, ITS Defendants filed its Motion to Dismiss (ECF No. 61) and Memorandum in Support (ECF No. 62), which included 8 pages of legal argument.  KBR

19

brief and 32 pages of new evidence and a declaration which do not address the discrete issue of "waiver." While the Court has the discretion to consider ITS Defendants' supplemental brief and accompanying documents, such materials only hinder Defendants' position.

Indeed, ITS Defendants re-argue previously made points—none of which demonstrate that Plaintiffs affirmatively agreed to waive their rights to bring forth their FLSA claims. For example, ITS Defendants provide exhibits of *sample* Form WH-60s and "Payment Form 941-X"—a document which purportedly demonstrates the DOL deducted employee shares of Social Security and Federal Income Tax from the DOL's settlement with ITS Defendants. These documents are irrelevant to the issue of "waiver" because they do not demonstrate that Plaintiffs knowingly waived their rights or were notified that acceptance of payment would result in a waiver.

Perhaps even more problematic, ITS Defendants rely on *Beauford v. ActionLink, LLC*, No. 4:12cv139 JLH, 2013 WL 12136606, *4 (E.D. Ark. Sept. 3, 2013) to argue that the cashing of a check pursuant to a DOL settlement bars a plaintiff from pursuing their claims under the FLSA. As Plaintiffs point out, the United States Court of Appeals for the Eighth Circuit reversed this holding in *Beauford v. ActionLink, LLC*, 781 F.3d 396, 406–08 (8th Cir. 2015). In that case, the Eighth Circuit concluded that where the

---

Defendants, in a 3-paragraph document, moved to join ITS Defendants' Motion. At the hearing, counsel for KBR Defendants argued that they believed they could provide supplementary information to show that Plaintiffs waived their FLSA rights. Although KBR Defendants had the opportunity to raise any such arguments in their own Motion to Dismiss, the Court concluded that it would be beneficial to provide KBR Defendants the opportunity to file a supplemental brief to address the narrow issue of "waiver."

defendant had agreed to pay missing back wages in settlement of a DOL investigation and sent checks to employees with a disclaimer stating that the checks represented "full payment" for "wages earned, including minimum wage and overtime, up to the date of the check," such release language was insufficient to notify the plaintiffs of the consequences of cashing the checks. *Id.* The court determined that the plaintiffs had not waived their FLSA claims by cashing the checks and could sue for additional payment under the FLSA because "[s]imply tendering a check and having the employee cash that check does not constitute an 'agreement' to waive claims; an agreement must exist independently of payment . . . ." *Id.* at 406. Moreover, the court refers to a "survey of cases from other circuits which support" that conclusion and states that "[o]ther circuits have repeatedly held that employees cannot "agree to accept payment" unless they are given notice of the rights that they are waiving. *Id.* at 407.

Because ITS Defendants were not directed to file their supplemental brief and did not seek leave of Court before filing such brief, the Court will grant Plaintiffs' Motion to Strike ITS Defendants' supplemental brief. The Court notes, however, that even had ITS Defendants properly sought permission to file the brief and accompanying documents, such materials would not in any way impact the Court's conclusion as to Defendants' Motions to Dismiss.

## IV.    CONCLUSION

The Second Amended Complaint plausibly alleges that Defendants are employers under the FLSA based on their control over Plaintiffs' work conditions, compensation,

21

and schedules.  Plaintiffs' allegations are sufficient to state a claim for relief under the

FLSA.  While Defendants may have made payments to Plaintiffs, the record does not

clearly demonstrate that Plaintiffs waived their right to bring forth their FLSA claims.

Thus, a case or controversy still exists in this case and Plaintiffs' FLSA claims are not

moot.  Moreover, even if Plaintiffs performed work that was subject to the SCA,

Plaintiffs may nonetheless pursue their private right of action under the FLSA.

Therefore, Defendants' Motions to Dismiss (ECF Nos. 61, 64) are denied.  Additionally,

because ITS Defendants did not seek leave of Court before filing their supplemental brief

which extends beyond the issue of "waiver," the Court will grant Plaintiffs' Motion to

Strike (ECF No. 86).  The Court's previously imposed Stay as to the issue of Conditional

Certification (ECF No. 28) is lifted.

An appropriate Order will accompany this Memorandum Opinion.

It is so ORDERED.

/s/
Henry E. Hudson
Senior United States District Judge

Date: **May 10, 2023**
Richmond, Virginia

22