## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

DANIEL HERNANDEZ, individually )
and on behalf of all other persons )
similarly situated, )
                       )
         Plaintiffs, )
                       )
v. )      Civil Action No. 3:22-cv-530–HEH
                       )
KBR SERVICES, LLC, *et al.*, )
                       )
         Defendants. )

### <u>MEMORANDUM OPINION</u>
### (Denying Defendants' Motion to Strike and Granting Plaintiffs' Motion for Conditional Certification)

This matter is before the Court on Plaintiffs'[1] Motion for Conditional Certification

and Notice to Putative Collective Members (the "Motion for Conditional Certification,"

ECF No. 14), filed on October 17, 2022, and KBR, Inc. and KBR Holdings, LLC's[2]

---

[1] Plaintiff is Daniel Hernandez, individually and on behalf of all other persons similarly situated.

[2] Defendants include: KBR Services, LLC; Industrial Tent Systems, LLC; Lodging Solutions, LLC; Star Payment Systems, Inc.; Industrial Tent Systems Holdings, LLC; 2M Lodging Solutions, LLC; and Bolton Holdings, LLC (collectively, "Defendants"). Defendants have primarily submitted filings in two groups. The first group is "ITS Defendants," which includes: Industrial Tent Systems, LLC; Lodging Solutions, LLC; Star Payment Systems, Inc.; Industrial Tent Systems Holdings, LLC; 2M Lodging Solutions, LLC; and Bolton Holdings, LLC.
    The second group was formerly referred to as "KBR Defendants," because it was comprised of KBR Services, LLC; KBR Holdings, LLC; and KBR, Inc. However, on June 22, 2023, this Court granted the parties' joint motion to dismiss KBR Holdings, LLC and KBR, Inc. from the case, without prejudice. (ECF Nos. 106, 107.) The Court will use "KBR Defendants" to refer to all three KBR Defendants, collectively, and the individually named KBR Defendant, where appropriate.
    The pending Motion to Strike was filed only by KBR, Inc. and KBR Holdings, LLC. (ECF No. 20.) Although KBR, Inc. and KBR Holdings, LLC are no longer parties to the case, the Court will nevertheless resolve their pending Motion.

Motion to Strike (the "Motion to Strike," ECF No. 20), filed on October 31, 2022. This case arises from a Fair Labor Standards Act ("FLSA") claim, in which Plaintiffs, who are allegedly employees of Defendants, claim Defendants did not compensate them for their overtime work. Specifically, Plaintiffs argue that they worked for Defendants as kitchen workers at Fort Pickett in Blackstone, Virginia, and regularly worked more than 40 hours a week without overtime pay. (Second Am. Compl. at 2.) Plaintiffs seek unpaid overtime wages, liquidated damages, pre- and post-judgment interest, and attorneys' fees. (Second Am. Compl. ¶ 5.)

In Plaintiffs' Motion for Conditional Certification, they seek to represent a putative collective of food service workers who were employed by Defendants at Fort Pickett and denied proper overtime compensation during the past three years. (Mot. for Cond'l Cert. at 2.) Plaintiffs' Motion is pursuant to 29 U.S.C. § 216(b)—the Fair Labor Standards Act ("FLSA").

KBR Defendants move to strike Plaintiffs' Motion, asserting that the six Declarations accompanying Plaintiffs' Motion are improper and inadmissible because they were not properly translated. (Mem. in Supp. of Mot. to Strike at 1, ECF No. 21.)

The parties have submitted memoranda in support of their respective positions. The Court heard oral argument on both the Motion for Conditional Certification and the Motion to Strike on June 27, 2023. For the reasons that follow, KBR Defendants' Motion to Strike will be denied and Plaintiffs' Motion for Conditional Certification will be granted in part and denied in part.

2

## I.     BACKGROUND

KBR Defendants contracted with the U.S. Army to provide support for the federal government's efforts to resettle Afghan evacuees at Fort Pickett in Blackstone, Virginia, following the end of the U.S.-Afghanistan war.  (ITS Mem. in Supp. of Mot. to Dismiss at 1–2, ECF No. 42.)  KBR Defendants then entered into subcontracts with ITS Defendants to perform culinary and logistical support[3] services towards that effort. (*Id.* at 2.)  ITS Defendants hired individual workers, along with second-tier subcontractors, like Star Payment, to meet its contractual obligations to KBR.  (*Id.*)  As the general contractor, KBR Defendants determined pay rates and working hours, and reserved the right to discipline and terminate subcontractor employees.  (Second Am. Compl. ¶ 28.)

Plaintiffs worked for Defendants as kitchen workers at Fort Pickett.  (*Id.* ¶ 11.) They allege that they "regularly worked more than 40 hours per week, without receiving proper overtime compensation as required by applicable federal law."  (*Id.* ¶¶ 35, 45.)  In particular, Hernandez claims that he typically worked seven days per week, for a total of roughly 84 hours per week.  (*Id.* ¶ 48.)  Regardless of how many hours they worked, Plaintiffs were allegedly only paid approximately $350 a day and never received any overtime pay.  (*Id.* ¶ 51.)

Before the contract between KBR and the U.S. Army was completed, the Department of Labor ("DOL") initiated an investigation to determine whether Defendants

---

[3] Plaintiffs "perform[ed] kitchen work, including as cooks, food preparers, dishwashers, cleaners, helpers, servers, and in other kitchen-related tasks[.]"  (Second Am. Compl. ¶ 34.)

complied with the FLSA. (ITS Mem. in Supp. at 2.) The DOL determined that ITS

owed back wages in the form of overtime under the FLSA. (*Id.*)

On October 17, 2022, Plaintiffs filed their Motion for Conditional Certification,

requesting that the Court conditionally certify and send notice to:

> All individuals employed by Defendants at Fort Pickett in Blackstone,
> Virginia for any length of time during the past three years, who performed
> institutional food service work, including but not limited to cooking, food
> preparation, dishwashing, cleaning, serving, and any other related food
> service tasks.

(Pls.' Mem. in Supp. at 2, ECF No. 15.)

In response to Plaintiffs' Motion, ITS Defendants filed a Motion to Stay Plaintiffs'

Motion for Conditional Certification until Defendants had the opportunity to submit their

Motions to Dismiss, which could have been dispositive of the case. (ECF No. 17.)

ITS Defendants' theory was that because there had been some payments made by the

DOL to some of the Plaintiffs in this matter, Plaintiffs' Complaint and Motion for

Conditional Certification were moot and, thus, this Court did not have jurisdiction over

the matter. (*Id.*)

This Court granted ITS Defendants' Motion to Stay only as to the issue of the

Conditional Certification so that it could rule on the Defendants' potentially dispositive

Motions to Dismiss. (Order, ECF No. 28.) Both ITS Defendants and KBR Defendants

subsequently filed their Motions to Dismiss (ECF Nos. 61, 64). Those Motions primarily

focused on the argument that the DOL's payments to some Plaintiffs mooted the issues

presently before this Court. KBR Defendants also asserted that they were not liable

because they did not employ Plaintiffs. (ECF No. 64 at 1–2.) This Court heard oral argument on Defendants' Motions to Dismiss on March 20, 2023, and extensively considered Defendants' mootness arguments. In a Memorandum Opinion and accompanying Order entered on May 10, 2023, this Court determined that although Plaintiffs may have received some payment from the DOL, there was nothing in the record to demonstrate that Plaintiffs waived their FLSA rights. (Mem. Op. at 10–18, ECF No. 98; Order, ECF No. 99.) Thus, the Court held that Plaintiffs' FLSA claims are not moot, denied Defendants' Motions to Dismiss, and lifted the previously imposed Stay. (Order, ECF No. 99.)

Simultaneous to Defendants filing their Motions to Dismiss, Defendants also filed their opposition briefs to Plaintiffs' Motion for Conditional Certification. (ECF Nos. 19, 26, 40). In these briefs, Defendants, in a duplicative nature, again raise the mootness arguments that were previously argued in their Motions to Dismiss. They also maintain that instead of adhering to this Court's common practice of utilizing the two-step analysis for determining if Plaintiffs are "similarly situated," it should adopt the novel approaches to this inquiry, adopted in *Mathews v. USA Today Sports Media Grp., LLC*, No. 1:22-cv-1407, 2023 WL 3676795 (E.D. Va. Apr. 14, 2023) and *Clark v. A&L Homecare and Training Ctr., LLC*, Nos. 22-3101/3102, 2023 WL 35596757 (6th Cir. May 19, 2023). KBR Defendants also argue that the six Declarations accompanying Plaintiffs' Motion should be struck from the record because they are not properly authenticated and thus improper and inadmissible. (Mem. in Supp. of Mot. to Strike at 1.)

5

### III.   ANALYSIS

**A.    KBR Defendants' Motion to Strike[4]**

Federal Rule of Evidence 901 requires that evidence be properly authenticated to be admissible.  However, affidavits in support of motions for conditional certification need not meet all evidentiary standards for admissibility.  *Robinson v. Empire Equity Grp., Inc.*, 2009 WL 4018560, at *5 n.18 (D. Md. Nov. 18, 2009).

Defendants argue that Plaintiffs' Motion for Conditional Certification is "completely premised on improper/unreliable declarations" because the six Declarations upon which Plaintiffs' Motion relies were not properly translated.  (KBR Defs.' Opp'n Br. at 10–13, ECF No. 19.)  Generally, an interpreter must be qualified and must give an oath or affirmation to make a true translation.  *See Jack v. Trans World Airlines, Inc.*, 854 F. Supp. 654 (N.D. Cal. 1994).  They argue that each Declaration asserts that the Declarant's primary language is Spanish, but there is no indication that they were properly translated from Spanish to English.  (Mem. in Supp. of Mot. to Strike at 1–2.)  KBR Defendants request that the Court strike the Declarations because they are "hearsay."  (*Id.* at 2–3.)

Plaintiffs, however, explain that they initially submitted Declarations that were in English and translated by members of Plaintiffs' counsel's firm that declared to have "translated this affidavit from Spanish to English accurately and truthfully to [Plaintiff]

---

[4] Although Plaintiffs first filed their Motion for Conditional Certification, the Court will initially address KBR Defendants' Motion to Strike Plaintiffs' Motion because the resolution of this motion necessarily affects what evidence the Court may consider in reviewing Plaintiffs' Motion.

and [he/she] agrees with everything contained herein." (Pls.' Opp'n to Defs.' Mot. to Strike at 5, ECF No. 44.) One of the translators is a partner with the firm and has been with the firm since 2009. (*Id.*)

Plaintiffs argue that the Declarations are entirely consistent with federal practice because "declaration[s] can be signed in English but accompanied by a separate declaration from a person who swears that the declaration was faithfully translated into the declarant's native language before the English language declaration was signed." (*Id.* (citing *Diaz v. Parkash 1630 LLC*, 2022 WL 16852216, at *6–7 n.7 (S.D.N.Y. Oct. 6, 2022); *Cuzco v. Orion Bldrs., Inc.*, 477 F. Supp. 2d 628, 634 (S.D.N.Y 2007) ("the fact that Plaintiff did not submit a Spanish language translation of Cuzco's declaration, and instead submitted a separate declaration indicating that the document had been translated, in no way affects the merits of whether this suit should proceed as a representative action."))).) Moreover, in Plaintiffs' Opposition Brief, they cure the purported deficiencies by attaching certified translations of Plaintiffs' Declarations signed by each Declarant. (Exs. 1–6, ECF Nos. 44-1–44-6.) Defendants acknowledged that the Declarations were cured during the June 27, 2023 hearing.

"[I]t is unclear the exact authentication needed for declarations in support of class certification[.]" *Rosiario-Guerro v. Orange Blossom Harvesting*, 265 F.R.D. 619, 624 (M.D. Fla. 2010). However, many courts have considered what admissibility standard applies to testimony submitted in support of a motion for conditional certification and determined that the evidentiary threshold required for summary judgment motions is too

7

high at this stage. *See, e.g.*, *Lee v. Metrocare Servs.*, 980 F. Supp. 2d 754, 760 (N.D. Tex. 2013) ("Plaintiffs need not present evidence in a form admissible at trial at the notice stage."); *Jesiek v. Fire Pros, Inc.*, 275 F.R.D. 242, 247 (W.D. Mich. 2011) ("A conditional certification motion does not seek final disposition of the action on the merits, unlike a summary judgment motion, and therefore requiring all evidence for consideration to be admissible has no logical basis."); *Reyes v. AT&T Mobility Servs., LLC*, 759 F. Supp. 2d 1328, 1333 (S.D. Fla. 2010) (noting the evidentiary standard for conditional certification is "fairly lenient"); *White v. MPW Indus. Servs.*, 236 F.R.D. 363, 368 (E.D. Tenn. 2006) ("[A]ffidavits submitted in support of a motion for conditional certification pursuant to § 216(b) need not meet the standard set forth in Rule 56(e). To require more at this stage . . . would defeat the purpose of the two-stage analysis.").

Indeed, courts have explained that "[m]otions for conditional certification of collective actions are nondispositive pretrial matters" and thus "Plaintiffs were not required to present affidavits that would otherwise meet the requirements of a dispositive motion to meet their 'modest factual showing.'" *Vargas v. HEB Grocery Co., LP*, 2021 WL 1098996, at *2 (W.D. Tex. Sept. 17, 2012) (quoting *Realite v. Ark Rests. Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998)); *see also Robinson*, 2009 WL 4018560, at *5.

The Court will deny KBR Defendants' Motion to Strike. The evidentiary standard for the conditional certification phase is a low bar and affidavits in support of motions for conditional certification need not meet all evidentiary standards for admissibility. *See*

*Vargas*, 2021 WL 1098996, at *2; *Robinson*, 2009 WL 4018560, at *5 n.18. Moreover, Plaintiffs have since cured any alleged deficiencies.

Additionally, the cases upon which KBR Defendants primarily rely to demonstrate that declarations must be properly translated are irrelevant because they were rendered on summary judgment motions. (*See* Mot. to Strike at 2–4 (citing *Trapaga v. Cen. States Joint Bd. Loc.*, 2007 WL 10177855, at *1 (N.D. Ill. Mar. 30, 2007); *Jack*, 854 F. Supp. at 657; *Cruz v. Aramark Servs., Inc.*, 213 Fed. App'x 329, 332 (5th Cir. 2007).) KBR Defendants' Motion is troubling because their assertion that the Declarations are "hearsay" appears to be a baseless litigation tactic. *See Vargas*, 2012 WL 4098996, at *7 n.5 ("The Court is disturbed by the innuendo injected by HEB that counsel for Plaintiffs may 'have a strong motive to mislead or distort the translation . . . .' HEB offers no evidence to substantiate its claims."); *Cuzco*, 477 F. Supp. 2d at 634 ("Defendants' counsel provides no basis—other than mere speculation—to suspect that Cuzco did not understand his declaration [was] what he was signing or that Plaintiff's counsel acted improperly with respect to Cuzco's declaration.") Considering that the evidentiary bar is low for the conditional certification stage and Plaintiffs cured any defects in their Opposition Brief, KBR Defendants' Motion to Strike will be denied. Thus, the Court will consider the Declarations submitted by Plaintiffs in support of their Motion.

### B. Plaintiffs' Motion for Conditional Certification

#### 1. The FLSA Collective Action Certification Process

Under the FLSA, private plaintiffs may bring a collective action on their own behalf and on the behalf of those "similarly situated" to them. 29 U.S.C. § 216(b). According to the statute:

> An action to recover the liability prescribed in [§ 216(b)] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and on behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and consent is filed in the court in which such action is brought.

*Id.* The Supreme Court has highlighted the importance of "employees receiving accurate and timely notice concerning the pendency of [a] collective action, so that they can make informed decisions about whether to participate." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). The Supreme Court has also emphasized that district courts have discretionary authority to facilitate notice to potential plaintiffs. *Id.* at 174. However, neither the Fourth Circuit nor the Supreme Court has prescribed a process for certification of FLSA collectives. *See Ison v. MarkWest Energy Partners, LP*, 2021 WL 5989084, at *2 (S.D.W. Va. Dec. 17, 2021). Rather, like most federal courts across the country, district courts within the Fourth Circuit have "uniformly" followed the approach set forth in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987). *Id.* at *3; *see also Thomas v. Maximus, Inc.*, 2022 WL 1482010, at *2 (E.D. Va. May 10, 2022). Under *Lusardi*, district courts undertake a two-step process: (1) the notice stage, also referred to

as the conditional class certification stage, and (2) the class decertification stage. *See Winks v. Virginia Dep't of Transp.*, 2021 WL 2482680, at *2 (E.D. Va. June 17, 2021) (citation omitted); *see also Purdham v. Fairfax Cnty. Pub. Schs.*, 629 F. Supp. 2d 544, 547 (E.D. Va. 2009) (citations omitted).

At the notice step, courts determine whether the plaintiffs have met their burden of satisfying the "similarly situated" requirement under a "lenient standard." *Winks*, 2021 WL 2482680, at *4–5. The Fourth Circuit has yet to establish a definition for "similarly situated." *Yerby v. City of Richmond*, 2020 WL 602268, at *2 (E.D. Va. Feb. 7, 2020) (citation omitted). However, "[t]he primary focus . . . is whether the potential plaintiffs are 'similarly situated with respect to the legal and, to a lesser extent, the factual issues to be determined.'" *Houston v. URS Corp.*, 591 F. Supp. 2d 827, 831 (E.D. Va. 2008). Courts aim to determine whether, based on the pleadings and affidavits before them, "the presence of common issues allows the class-wide claims to be addressed without becoming bogged down by individual differences among class members." *Id.* at 832; *see also Amoko v. N&C Claims Serv., Inc.*, 2021 WL 6430992, at *1 (D.S.C. Dec. 29, 2021) (describing courts' decision-making process at the notice stage). "For that reason, the FLSA's certification requirements resemble, but are not identical to, the requirements for class certification under Federal Rule of Civil Procedure 23." *Thomas*, 2022 WL 1482010, at *3 (citing *Houston*, 591 F. Supp. 2d at 832). Thus, courts consider whether plaintiffs have made "a modest factual showing sufficient to demonstrate that they and potential plaintiffs were victims of a common policy or plan that violated the law."

11

*Choimbol v. Fairfield Resorts, Inc.*, 475 F. Supp. 2d 557, 564 (E.D. Va. 2006) (citations omitted). "Insubstantial differences in job duties, hours worked and wages due that do not materially affect whether a group of employees may be properly classified are not significant to the 'similarly situated' determination." *LaFleur v. Dollar Tree Stores, Inc.*, 30 F. Supp. 3d 463, 468 (E.D. Va. 2014) (citation omitted).

If the court determines that the plaintiffs meet the FLSA's "similarly situated" standard, the court will conditionally certify the collective and authorize notice to similarly situated plaintiffs so that they can opt into the collective action. *Thomas*, 2022 WL 1482010, at *3.

In the second step of collective certification, the court applies "a more 'stringent' factual determination" to decide whether a putative collective fulfills the "similarly situated" standard. *LaFleur*, 30 F. Supp. 3d at 467 (citations omitted). "If, after discovery, it is apparent that plaintiffs are not similarly situated, the court may decertify the collective action and dismiss the claims of the opt-in plaintiffs without prejudice." *Id.* at 468 (citation omitted).

Defendants argue in their Opposition Briefs that the Court should not utilize the two-stage certification process outlined above, and, instead, should analyze this case under the Fifth Circuit's newly established framework in *Swales v. KLLM Transp. Servs., LLC*, 985 F.3d 430 (5th Cir. 2021) or the Sixth Circuit's recently created standard in *Clark*, 2023 WL 3676795, at *2. (KBR Defs.' Notice of Suppl. Authority at 2-6, ECF No. 104.) Plaintiffs counter that district courts within the Fourth Circuit, including this

12

Court, in particular, have consistently followed the two-step *Lusardi* framework for twenty years, and no other circuits have followed *Swales*. (Pls.' Resp. at 2–5, ECF No. 110.)

In *Swales*, the Fifth Circuit rejected the two-stage collective certification process. *Swales*, 985 F.3d at 443. Instead, the court held that district courts "should identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.' And then it should authorize preliminary discovery accordingly." *Id.* at 441. In *Clark*, the Sixth Circuit similarly rejected the two-stage process and instead held that "the plaintiffs must show a 'strong likelihood' that those employees are similarly situated to the plaintiffs themselves." 68 F.4th at 1011.

This Court declines Defendants' invitation to apply either of these standards "and will follow the approach of a litany of other courts within the Fourth Circuit, which have done the same when presented with this issue." *Thomas*, 2022 WL 1482010, at *3 (declining to follow *Swales* and cataloging an extensive list of numerous courts within the Fourth Circuit that have done the same because *Swales* does not bind courts within the Fourth Circuit). While it is true that one district court within the Fourth Circuit has recently adopted the approach set forth in *Swales*, *see Mathews v. USA Today Sports Media Grp., LLC*, 2023 WL 3676795, at *3 (E.D. Va. Apr. 14, 2023), the Court agrees with Plaintiffs that this one case is an extreme outlier. Indeed, not only have courts within the Fourth Circuit typically refused to follow *Swales*, but courts within other

13

circuits have done so as well. *See, e.g., In re Albertsons*, 2021 WL 4028428, at *2 (7th

Cir. Sept. 1, 2021) (holding that district court did not err in applying two-stage collective

certification framework instead of *Swales*, as "district courts have 'wide discretion to

manage collective actions.'" (citation omitted)); *Branson v. All. Coal*, 2021 WL 1550571,

at *4 (W.D. Ky. Apr. 20, 2021) (refusing to follow *Swales* because of the importance of

the district court's role in overseeing the notice process).

Like the vast majority of these courts, this Court sees no compelling reason to

deviate from twenty years of established precedent. The decisions in *Swales*, *Clark*, and

*Mathews* do not bind this Court. In light of the refusal of multiple district courts within

the Fourth Circuit to apply *Swales*, and in the absence of guidance from the Supreme

Court or the Fourth Circuit on the issue, the Court will continue to apply the two-stage

collective certification process first established in *Lusardi*.

Furthermore, the facts and procedural posture in this case diverge from that in

*Swales* in a manner that only underscores the importance of conditional certification and

early judicial involvement in the notice process. *See Branson*, 2021 WL 1550571, at *4

(deciding not to follow *Swales* partly because many plaintiffs had already opted into the

suit, without the court's intervention, and the court sought to exert more oversight over

the notice process). *Swales* requires district courts to decide "potentially dispositive,

threshold" merits matters—in that case, whether the plaintiffs should have been classified

as non-exempt employees rather than independent contractors—before allowing notice to

prospective plaintiffs to be sent out. *Swales*, 985 F.3d at 441. The *Swales* court reasoned

that courts should resolve these matters before authorizing notice because "altering those who cannot ultimately participate in the collective 'merely stirs up litigation.'" *Id.* (quoting *In re JP Morgan Chase & Co.*, 913 F.3d 494, 502 (5th Cir. 2019). However, "the Fifth Circuit appeared to assume that court-facilitated notice constitutes the only method of notifying potential plaintiffs of a FLSA collective action." *Thomas*, 2022 WL 1482010, at *4 (citing *Branson*, 2021 WL 1550571, at *4).

Unlike in *Swales*, Plaintiffs' counsel indicated that they have already added 26 opt-in plaintiffs with no judicial intervention or oversight. *See Branson*, 2021 WL 1550571, at *4 (noting that *Swales*' rationale does not apply when the plaintiffs' counsel has already added opt-in plaintiffs with no judicial oversight). (Pls.' Mem. in Supp. at 13.) At this stage, the Court lacks sufficient information to determine whether these opt-in plaintiffs' claims bear the legal and factual similarities necessary for inclusion in the collective. Approving the language and communication methods of the notice to potential plaintiffs would enable the Court to fulfill its "managerial responsibility to oversee the joinder of additional parties" and ensure that the notice process does not improperly stir up litigation. *Hoffman-La Roche*, 493 U.S. at 171. "Applying the *Swales* framework would ultimately undermine the Court's oversight role in this case." *Thomas*, 2022 WL 1482010, at *4. Moreover, the Court believes it would be judicially prudent to adhere to the twenty years of precedent in utilizing the two-step process, as stated. However, it believes that if a reviewing court were to adopt a standard similar to the one set forth by the Sixth Circuit in *Clark*, whereby "the plaintiffs must show a 'strong

15

likelihood' that those employees are similarly situated to the plaintiffs themselves," 68 F.4th at 1011, for the reasons that follow, the Plaintiffs, here, have met such standard.

### 2. "Similarly Situated" Potential Plaintiffs and "Common Policy or Plan"[5]

Plaintiffs have made a threshold showing that the potential plaintiffs constitute similarly situated employees and that Defendants engaged in a common policy or plan. In their Motion, Plaintiffs argue that, based on six declarations from Defendants' employees, they and the Putative Class Members worked as non-exempt employees of Defendants; that they performed similar duties; that Defendants paid them an hourly rate; and that Defendants uniformly engaged in a policy and practice of requiring their employees to regularly work in excess of forty hours per week, without providing overtime compensation as is required by federal law. (Pls.' Mem. in Supp. at 1–6.) Plaintiffs also highlight that at the time they filed their Motion, 26 other former employees had filed pre-notice opt-in consent forms, demonstrating that others had been negatively affected by Defendants' allegedly illegal policies. (Pls.' Mem. in Supp. at 13.) Plaintiffs assert that they have met or exceeded the amount of evidence that courts usually require for the satisfaction of the similarly-situated standard. (*Id.*)

---

[5] In their response to Plaintiffs' Motion, Defendants reraise arguments that this Court has previously resolved at the motion-to-dismiss stage. Specifically, they again argue that Plaintiffs' claims are moot because the DOL made some payments to some Plaintiffs and that KBR Defendants were not Plaintiffs' employer. (KBR Defs.' Opp'n Br. at 15, 18.) They also argue that Plaintiffs' Motion for Conditional Certification should be denied because the supporting Declarations were not properly translated. (*Id.* at 11.) The Court thoroughly considered and rejected these arguments. (*See supra* III.B.1; Mem. Op. at 5 n.6, 10–18.) The Court will refrain from addressing these repeated arguments.

Defendants argue that Plaintiffs are not similarly situated to the proposed class they seek to represent because "there is a significant variety in the job responsibilities and required skills for the purported class of individuals Plaintiffs seek to represent." (ITS Defs.' Opp'n Br. at 9–12, ECF No. 26.) They also assert that Plaintiffs have failed to present sufficient evidence that they were subjected to a common policy or plan that violates the FLSA. (*Id.*)

In their Reply, Plaintiffs emphasize that they and the proposed class did, in fact, perform similar, if not, identical job duties. (Pls.' Reply to ITS Defs.' Opp'n at 2, ECF No. 45.) All Plaintiffs worked at the same location and performed tasks such as food preparation, cooking, serving food, cleaning the kitchen and bathrooms, and cleaning and organizing frozen food. (*Id.*) Plaintiffs also take issue with Defendants' assertion that there is insufficient evidence that Plaintiffs were subjected to a common policy or plan that violates the FLSA because Defendants acknowledge that they paid the DOL for some of the unpaid wages owed. (*Id.* at 1.)

The Court agrees with Plaintiffs and finds that they have satisfied their burden at this stage. The Declarations provided by Plaintiffs demonstrate that they performed closely related, if not the exact same job duties. Moreover, "Plaintiffs may still be considered 'similarly situated' despite differences in job duties, hours worked, and wages due that are insubstantial and do not materially affect whether a group of employees may be properly classified." *Devine v. City of Hampton*, 2015 WL 10765154, at *2 (E.D. Va. Oct. 13, 2015) (citing *Romero v. Mountaire Farms, Inc.*, 796 F. Supp. 2d 700, 705

(E.D.N.C. 2011) (internal citations omitted).  Any differences in the job duties listed between Declarants are insubstantial and do not affect this inquiry.

Furthermore, "'[t]he submission of consistent employee declarations . . . has consistently been held as sufficient and admissible evidence of a policy to be considered for conditional class certification.'" *Thomas*, 2022 WL 1482010, at *5 (quoting *Hargrove v. Ryla Teleservs., Inc.*, 2012 WL 489216, at *8 (E.D. Va. Jan. 3, 2012), *report and recommendation adopted*, 2012 WL 463442 (E.D. Va. Feb. 13, 2012)).  "'[T]hose declarations must show that the employees have first-hand knowledge of the events described therein.'" *Id.* (quoting *McNeil v. Faneuil, Inc.*, 2016 WL 11673838, at *3 (E.D. Va. Aug. 3, 2016)).  Because this step requires that the plaintiffs must have been "victims of a single decision, policy, or plan[,] . . . plaintiffs must submit some evidence that the alleged FLSA violations were not the product of happenstance or outlier instances of rogue supervisor behavior." *McNeil*, 2016 WL 11673838, at *3.  As stated, this inquiry is a "lenient standard." *Id.*

Plaintiffs have submitted Declarations in support of their allegations that Defendants consistently denied non-exempt food service workers overtime pay to which they were entitled.  (Pls.' Mem. in Supp. at 4–6 (citing Exs. C, D, E, F, and H to Pls.' Mem. in Supp., Declarations of Hernandez, Jorrosay, Rojas, Llano, Rodriguez, and Ramos, respectively, ECF Nos. 15-3–15-8).)  Rather than pay Plaintiffs for the hours that they actually worked, Defendants instead paid them a flat fee which was well below the amount that they had earned, plus an additional $50 for food, regardless of how many

hours they worked. (*Id.*)  This amounts to the "modest factual showing" needed for conditional certification.  *Choimbol*, 475 F. Supp. 2d at 564.  As Plaintiffs correctly point out, the conditional certification step merely requires only a modest factual showing of similarity between Plaintiffs and the Putative Class Members, and the Court need not address merits issues at this first step.  Moreover, at this posture, "the Court need not prematurely delve into whether Plaintiffs' claims require individualized treatment that would render a collective action unmanageable."[6] *Thomas*, 2022 WL 1482010, at *6. For these reasons, the Court conditionally certifies the class and will order notice to potential class members, as discussed below.

### 3.   Plaintiffs' Initial Requested Relief

As previously stated, in Plaintiffs' Motion, they request that the Court conditionally certify the following Putative Class:

> All individuals employed by Defendants at Fort Pickett in Blackstone, Virginia for any length of time during the past three years, who performed institutional food service work, including but not limited to cooking, food preparation, dishwashing, cleaning, serving, and any other related food service tasks.

---

[6] At oral argument, Defendants attempted to argue that the Court should individually evaluate each potential Plaintiff, however, the Court reminded Defendants that such concerns are better suited for the decertification stage. *See Thomas*, 2022 WL 1482010, at *6 ("Concerns about the predominance or individualized nature of Plaintiffs' and the Putative Class Members' claims require merits-based analyses that courts wait to tackle during the decertification stage, after notice to potential plaintiffs is finalized and the parties have completed discovery."); *see also Wiley v. Asplundh Tree Expert Co.*, 2013 WL 12182398, at *2 (S.D.W. Va. Nov. 1, 2013) ("Defendant's argument of the individualized nature of said claims for overtime compensation is more appropriately decided at step two, after it is known who the class will consist of, and after some of the factual issues can be fleshed out in discovery.").

(Pls.' Mem. in Supp. at 2.) Plaintiffs also ask the Court to order Defendants to provide Plaintiffs' counsel with the names, current or last known addresses, email addresses, phone numbers, cell phone numbers, and dates of employment for all individuals who were employed to perform institutional food service work, including but not limited to cooking, food preparation, dishwashing, cleaning, serving, and any other related work at Fort Pickett in Blackstone, Virginia at any time within the past three years through the final disposition of this matter. (Pls.' Mem. in Supp. at 13–14.) Additionally, Plaintiffs seek to disseminate the Notice and Consent form to the Putative Class Members via mail, email, and text message. (*Id.* at 15.) They also ask that the Court authorize a 90-day opt-in period. (*Id.* at 19–20.)

In response, Defendants take issue with nearly every aspect of Plaintiffs' proposed Notice and Consent requests. First, they argue that the Notice should state the Court's neutrality at the outset. Second, they ask that the Notice present Defendants' position on the merits—namely, that they deny liability. Third, they maintain that the Notice should advise potential plaintiffs of their obligations if they join the action. Fourth, they request that the Court only permit mail as the form of notice. Fifth, they contend that a 45-day opt-in period should control. Sixth, they assert that Notice should only be sent by a third-party administrator. Seventh, they contend that there is no special need for potential plaintiffs' telephone numbers to be shared with Plaintiffs' counsel. Additionally, they seek to make several other "points of clarification," such as altering the timeframe of the definition from "three years" to instead refer to August 2021 to February 2022;

20

modifying Plaintiffs' proposed anti-retaliation statement; changing reference to the statute of limitations; and more.  They conclude by requesting that the Court order the parties to meet and confer over the method and content of the notice before it is issued. (KBR Defs.' Opp'n Br. at 19–38.)

### 4.   The Hearing and Parties' Joint Motions

At the hearing on this Motion, the Court indicated that it would grant Plaintiffs' Motion, in part, as to the issue of certification.  However, as to the form and manner of Notice, the Court only ruled on one issue: the length of the opt-in period.[7]  Beyond that, the Court ordered the parties to meet, confer, and submit a Joint Statement and proposed Discovery Plan articulating aspects of the Notice upon which they agreed and disagreed.

The Court commends the parties for reaching agreed-upon terms concerning Notice and an extensive Discovery Plan.  (ECF Nos. 116, 117, respectively.)  The Court has thoroughly reviewed the parties' joint filings and concludes that they are reasonable and appropriate.  Accordingly, Plaintiffs' Motion for Conditional Certification will be granted as to the request to conditionally certify and denied as to any aspect of the Notice that conflicts with the parameters as provided in ECF No. 116.  To be clear, the parties shall adhere to the particulars regarding the manner and form of Notice as outlined in ECF No. 116.

Moreover, the Court approves of the parties' joint proposed Discovery Plan (ECF No. 117) and encourages the parties to continue to work together to resolve any

---

[7] The Court determined that a 70-day opt-in period is reasonable based upon the facts and circumstances of this matter.

discovery-related disputes. Should the parties have any objections or concerns, they are directed to inform the Court about such matters.

### IV.    CONCLUSION

For the foregoing reasons, the Court will deny KBR Defendants' Motion to Strike (ECF No. 20) and grant in part and deny in part Plaintiffs' Motion (ECF No. 14). The parties shall adhere to the parameters as set forth in their Joint Notice and Joint Discovery Plan (ECF Nos. 116, 117).

An appropriate Order will accompany this Memorandum Opinion.

It is so ORDERED.

_____ /s/

Henry E. Hudson
Senior United States District Judge

Date: **August 11, 2023**
Richmond, Virginia